# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Meta Platforms Inc.<br>1601 Willow Road, Menlo Park, CA 94025<br>RE: https://www.instagram.com/kill96omez/ | Case No.  '24 MJ1632 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the __Northern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code § 1324 | Transportation Of Illegal Aliens and Conspiracy |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent John E. Costello, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ John E. Costello*
Applicant's signature

John E. Costello, Border Patrol Agent, US Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: April 25, 2024

*/s/ Allison H. Goddard*
Judge's signature

City and state: San Diego, California        Hon. Allison H. Goddard, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

**Property to Be Searched:**

Meta Platforms Inc. is an electronic communication service provider whose primary computer information systems and other electronic communications, and storage systems, records, and data are located at Meta Platforms Inc., 1601 Willow Road, Menlo Park, CA 94025.

## ATTACHMENT B
## Particular Things to be Seized

I.     **Service of Warrant**

The officer executing the warrant shall permit Meta Platforms Inc., as custodian of the files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II.    **Information to be disclosed by Meta**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms Inc. ("Meta"), including any messages, records, files, logs, or information that have been deleted but are still available to Meta Platforms Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta Platforms Inc. is required to disclose the following information to the government for this account:

https://www.instagram.com/kill96omez/

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook/Instagram passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook/Instagram activities;

(c)    All photos and videos uploaded by that account and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook/Instagram user identification numbers; groups and networks of which the user is a member, including the groups' Facebook/Instagram group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook/Instagram applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook/Instagram posts and all non- Facebook/Instagram webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook/Instagram searches performed by the account;

(l) All information about the user's access and use of Facebook/Instagram Marketplace;

(m) The types of service utilized by the user;

 (n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

 (o) All privacy settings and other account settings, including privacy settings for individual Facebook/Instagram posts and activities, and all records showing which Facebook/Instagram users have been blocked by the account;

 (p) All records pertaining to communications between Facebook/Instagram and any person regarding the user or the user's Facebook/Instagram account, including contacts with support services and records of actions taken.

## III. Information to be seized by the government

The search of the electronic records supplied by Meta Platforms Inc. pursuant to this warrant will be conducted as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant. The search of the data will be limited in time from February 9th, 2022, to September 28, 2022, and be further limited to:

 (a) Records tending to show alien trafficking, including communications referring to alien smuggling arrangements, smuggling routes, payment, and methods of smuggling, delivery locations, communications referring to the acquisition of vehicles and or individuals to drive those vehicles;

 (b) Records that provide context to any other communication reflecting the criminal activity described in this warrant including any electronic

mail or other communication sent or received in temporal proximity to any relevant electronic mail or other communication and any electronic mail or other communication that identifies any users of the subject account;

(c) Records identifying the user(s) of the **Target Account**;

(d) Records indicating how and when the Facebook/Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook/Instagram account owner;

(e) Records identifying the transmission of currency, funds, or other value that substitutes currency to another location or person by any means. "Any means" includes, but not limited to, through a financial agency or institution; an electronic funds transfer network; an informal value transfer system; or any person engaged in the transfer of funds, operating as an unlicensed Money Service Business.

(f) The identity of the person(s) who communicated with the account user about matters relating to violations of 8 U.S.C. § 1324, including records that help reveal their whereabouts;

**Which are evidence of violations of 8 U.S.C. § 1324 (alien smuggling and conspiracy to smuggle aliens)**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| IN THE MATTER OF THE SEARCH OF:<br><br>Meta Platforms Inc.<br>1601 Willow Road, Menlo Park, CA 94025<br>RE:<br>https://www.instagram.com/kill96omez/ | **AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT** |
|---|---|

I, John E. Costello, a Border Patrol Agent with the United States Border Patrol, Brown Field Station Intelligence Team, being duly sworn, state:

### PURPOSE OF AFFIDAVIT

1. I make this affidavit in support of an application for a search warrant in furtherance of an investigation conducted by agents of the United States Border Patrol ("USBP") to search Facebook, Inc. ("Facebook"), located at 1601 Willow Road, Menlo Park, California 94205, as more particularly described in Attachment A, for an account associated with the following user name: https://www.instagram.com/kill96omez/ ("**Target Account")** owned and used by Miguel VILLA-Gomez ("VILLA"), for items described in Attachment B, that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely 8 U.S.C. § 1324 (Alien Smuggling and Conspiracy to Commit Alien Smuggling).

2. This investigation has revealed that VILLA is the owner and operator of the online Instagram accounts associated with the username: https://www.instagram.com/kill96omez/.

3. In June of 2021, agents assigned to the Brown Field Border Patrol's Targeted Enforcement Unit (BRF TEU) learned of a complex and continuing conspiracy to smuggle aliens from northern Mexico through southern California and into the interior of the United States. As a result of this discovery agent began a station-based investigation into the Jose

Luis ALEJO-Cruz. Subsequent analysis revealed ALEJO to be a coordinator and facilitator of this Los Angeles/San Diego, California-based human smuggling organization. Agents learned ALEJO coordinated the pick-up and transport of illegal aliens ("IAs") as well as using other subjects to recruit drivers and discuss the logistics of the smuggling events he coordinates as well as payment for these actions. One of these recruiters was Miguel VILLA-Gomez using the Instagram account "kill96omez", (hereinafter referred to as the **Target Account**). ALEJO, VILLA, and others were ultimately charged and arrested. However, further investigation of ALEJO's Instagram returns indicates VILLA may have been involved in the conspiracy for longer than investigators initially believed.

4. Based on the investigation in this case as set forth below, I submit there is probable cause to believe that evidence of a violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (v)(I) will be found stored within the **Target Account.**

5. My knowledge of the facts alleged in this Affidavit arises from my training and experience, my personal observations, my participation in the federal investigation described herein, my conversations with other law enforcement agents involved in this investigation, and my review of records obtained during this investigation. Because this Affidavit is submitted for the limited purpose of securing a search warrant to search the **Target Account**, it does not include every fact known to me concerning the investigation.

## EXPERIENCE AND TRAINING

6. I have been employed as a United States Border Patrol ("USBP") agent ("BPA") since April 2006. I am currently assigned to the San Diego Sector Intelligence Unit ("SDC SIU"). I am a graduate of the United States Border Patrol Academy at the Federal Law Enforcement Training Center ("FLETC") in Artesia, New Mexico. The Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), criminal law, and statutory authority, as well as cross-training in Title 21 of the United States Code (Controlled Substance Act (CSA) violations) and Title 19 of the United States Code (customs law violations). I have been trained in investigating various violations of federal law, including alien smuggling, narcotics smuggling, weapons

*Affidavit in Support Search Warrant*  2

smuggling, and bulk currency smuggling. I have also worked with and learned from other agents and criminal investigators with extensive experience in these investigations. Prior to my position as Border Patrol Agent – Intelligence, I was assigned as a task force officer to the San Diego Border Enforcement and Security Task Force (BEST) with Homeland Security Investigations (HSI). I was also assigned to the Campo Border Patrol Station where I worked in uniformed and plain clothes assignments.

7. As a BPA, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants. As an Agent with the Border Patrol, my responsibilities include the investigation of possible violations of Immigration and Nationality laws (Title 8, United States Code), including alien smuggling in violation of Title 8, United States Code, Section 1324, and related offenses.

8. Through investigations, training, law enforcement intelligence sources, and conversations with senior agents and task force officers/agents, I have become familiar with the operations of both large and small alien and/or drug smuggling organizations (ASOs/DTOs) operating within the United States and internationally.

9. I have arrested and interviewed numerous alien smugglers. Through these experiences, I have become familiar with the activities of those who coordinate smuggling events and the practices employed by the drivers/smugglers locally and abroad, including recruitment methods, transportation methods and tactics used to communicate with the drivers and avoid detection by law enforcement.

10. Through my training and experience, I have gained a working knowledge of and insights into the workings of criminal organizations. I have also gained extensive information as to the operation habits of persons who make their living as alien and narcotics smugglers. I have become familiar with the behavior, speech, routes and method of operation utilized by criminal organizations to avoid detection and apprehension by law enforcement officers.

*Affidavit in Support Search Warrant* 3

11. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (v)(I) exist. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

12. Since the opening of this investigation, BRF TEU and San Diego Sector Intelligence Unit ("SDC SIU") agents have identified the **Target Account** as being used by VILLA to both recruit drivers and assist in coordinating their efforts at the behest of Jose Luis ALEJO-Cruz.

## **FACTS SUPPORTING PROBABLE CAUSE**

13. Investigating agents first saw the **Target Account** on Christmas day, December 25th, 2021, after a fatal crash led to the arrest of Kevin Antonio Quevedo Moncada. At approximately 5:50 PM, a scope operator reported a suspicious vehicle driving southbound on a road known as the Minnewawa Truck Trail. This road runs both North and South and connects to Otay Lakes Road at its northern most point. At its southern most point it is approximately 2.8 miles from the international boundary separating the United States from Mexico. As such it provides a convenient egress for alien smugglers as a smuggling route and is very commonly used by alien smugglers.

14. At approximately 6:02 PM, BPA Sells observed a black Honda Accord that matched the description of the vehicle relayed by the scope operators. BPA Sells attempted a vehicle stop on Quevedo's car, in response to which the Honda briefly stopped and then immediately drove off at a high rate of speed.

15. As Quevedo was attempting to flee from the agents he drove over a curb and continued fleeing. The vehicle entered the Thousand Trails campground and made a series of rapid, erratic turns before ramming a marked Border Patrol vehicle, exiting the campground, and taking off at a high rate of speed eastbound on Otay Lakes Road, reaching speeds of close to 100 mph. Agents fell behind and lost sight of the car around a turn. Quevedo lost control of the car, launching it off the road and into the trees and ejecting his passengers. One passenger died on impact and the other two were taken to the hospital in

*Affidavit in Support Search Warrant*   4

critical condition. The three ejected individuals were all later discovered to be aliens unlawfully present in the United States.

16. During his post Miranda statement, Quevedo stated he met a guy (later identified as Villa-Gomez) approximately a week before the crash who informed him about work but did not tell him exactly what the job entailed. Quevedo agreed and Villa-Gomez stated his friend would contact him via the social media application Instagram. Quevedo stated the Instagram usernames for these individuals are "Louie" and "kill96omez"(**Target Account**). Quevedo stated Louie called him and instructed him to drive down to "Chula" and there was going to be "a package, like weed and stuff".

17. Louie told Quevedo to download the texting application WhatsApp. Quevedo was told to share his location through both WhatsApp and iPhone Message. Quevedo stated on either December 21st or December 22nd he tried to pick up illegal aliens once before for Louie but stated the people did not make it to the pickup location and was told to go back home.

18. Quevedo stated on today's event Louie directed him to the location through FaceTime calls and messages. Quevedo stated he drove down from Lake Forest, California via the "5", to the "805", to "Chula", then took side streets to a liquor store. Quevedo stated he was instructed to go to a liquor store before he headed to "the trail". Quevedo was asked how much he was going to get paid for this. Quevedo stated he was going to get paid $2,000.00 dollars for everything.

19. Quevedo stated he last had contact with Louie at the bottom of the trail. He was instructed to drive up the trail and was informed "they were going to be right there". Quevedo stated when he got to the top of the trail, he saw three people on the trail that appeared out of nowhere. Quevedo stated he then asked the people if they were there with "Kill." Quevedo stated all three jumped in the vehicle and told him in Spanish, "let's go, run!"

20. Quevedo was ultimately charged with and convicted of alien smuggling resulting in death and alien smuggling resulting in serious bodily injury. Analysis of his

*Affidavit in Support Search Warrant*  5

phone download showed he had successfully smuggled aliens for ALEJO and VILLA previously in December 2021, contrary to his assertion that he had been unsuccessful in his prior attempt.

21. Agents obtained search warrants for both accounts Quevedo discussed. The user of the **Target Account** was identified as Miguel Isaac VILLA-Gomez; "Louie" is Jose Luis ALEJO-Cruz. Both were charged, as well as two other co-conspirators, in a conspiracy to transport aliens. *See United States v. Rosales-Herrera et al*, 23-CR-871-CAB. ALEJO has since pleaded guilty and been sentenced.

22. In reviewing the Instagram returns for the **Target Account**, investigators uncovered numerous conversations about alien smuggling, indicative that VILLA and ALEJO were recruiting drivers to smuggle aliens using the **Target Account**. As an example, VILLA used the **Target Account** to recruit a driver using the Instagram handle "kkaizn" in December 2021:

```
12/14/21
Kkaizn:                im in la
12/20/21
Target Account:        Still interested?
Kkaizn:                yessir
Kkaizin:               how much
12/20/25
Target Account:        2k
Target Account:        Lmk if u interested
Target Account:        Need a driver asa
Kkaizn:                im interested
Target Account:        Fr bro
Kkaizn:                whats the task  ?
Kkaizin:               yessir
Target Account:        Gotta drive to Sd
Target Account:        U close to there
Target Account:        Pick some ppl up and bring them back to LA
```

Later in the conversation, VILLA sent Kkaizn the phone number 213-539-1974, saying it was his "boss" and to let VILLA know when the "boss" contacted Kkaizn. This phone number belonged to and was used by ALEJO.

*Affidavit in Support Search Warrant*        6

23. The initial search warrants for the **Target Account** and ALEJO's accounts were limited to the time period of December 13, 2021 to February 9, 2022. It appeared that Villa-Gomez had ceased his involvement in the conspiracy by January 2022, as investigators did not see more communications between him and alien smuggling drivers or between him and ALEJO. Agents also stopped encountering drivers who claimed to be recruited by VILLA.

24. ALEJO, however, continued to be involved in alien smuggling, and investigators applied for and obtained a second search warrant for his Instagram from February 9, 2022, to October 19, 2022. In reviewing those Instagram returns, investigators uncovered a conversation between ALEJO and VILLA well after January 2022:

6/12/2022
ALEJO: Foo when u gonna start working again
ALEJO: Ur drivers miss u
7/15/2022
**Target Account**: A la chamba
**Target Account**: No me cai de otra
**Target Account**: Let's run routes again I'll find crash dummies
ALEJO: Foo I got safer routes
ALEJO: Wayyy safer
ALEJO: Like score everday tyoe shut
**Target Account**: Ppl been hittin me but I be lazy to reply
**Target Account**: U got some Fsho Fsho today?
ALEJO: Yes
ALEJO: I need driver asap in Sd
ALEJO: I got a group already there
**Target Account**: Ima activate some crash dummies
ALEJO: Asap pls
7/28/22
**Target Account**: I can find u a driver today Fsho
**Target Account**: Lemme tap in
ALEJO: Bet bro I have fat ass groups

25. The term "crash dummies" is not one that is generally used in alien smuggling for drivers or smuggled aliens. This is the first time I have seen it used in reference to finding a driver to smuggle aliens. As such, I believe VILLA was using it as a reference to

*Affidavit in Support Search Warrant*   7

Quevedo Moncada and the deceased alien, joking about the fact that one of his prior drivers had crashed and killed someone.

26. In a reverse proffer conducted at the United States Attorney's Office, VILLA was confronted with the evidence against him and denied being involved with alien smuggling in the summer of 2022.

27. Based on the conversation between ALEJO and VILLA, I believe that VILLA may have re-initiated his involvement in the alien smuggling conspiracy sometime in the summer of 2022.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

28. The United States has not attempted to obtain this data by other means. The United States has previously obtained the conversation described above through ALEJO's Instagram search warrant returns. However, the United States has not previously attempted to obtain the rest of VILLA's Instagram communications for the date range sought.

## TECHNICAL BACKGROUND

29. Facebook owns and operates free-access social networking websites, one of which uses the same name that can be accessed at http://www.facebook.com as well as another that can be accessed at http://www.instagram.com. Facebook allows its users to establish accounts with Facebook and Instagram, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook/Instagram users, and sometimes with the general public.

30. Facebook asks users to provide basic contact information to Facebook/Instagram, either during the registration process or thereafter. This information may include the user's full name, birthday, contact email addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

31. Facebook users can select different levels of privacy for the communications and information associated with their Facebook/Instagram accounts. By adjusting these privacy settings, a Facebook/Instagram user can make information available only to

*Affidavit in Support Search Warrant*    8

himself or herself, to particular Facebook/Instagram users, to all Facebook/Instagram users, or to anyone with access to the Internet, including people who are not Facebook/Instagram users. Facebook/Instagram accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

32. Facebook/Instagram users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. A Facebook/Instagram user can also connect directly with individual Facebook/Instagram users by sending the other user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook/Instagram and can exchange communications or view information about each other. Each Facebook/Instagram user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

33. Facebook/Instagram users can create profiles that include photographs, lists of personal interests, and other information. Facebook/Instagram users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook/Instagram users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

34. Facebook/Instagram has a Photos application where users can upload an unlimited number of albums and photos. Another feature of the photos application is the ability to "tag" (i.e., label) other users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook/Instagram's purposes, a user's "Photoprint" includes all photos uploaded by

that user that have not been deleted, as well as all photos uploaded by others that have that user tagged in them.

35.  Facebook/Instagram users can exchange private messages on Facebook/Instagram with other users.  These messages, which are similar to email messages, are sent to the recipient's "Inbox".  These messages are sometimes referred to as DM's (Direct Messaging) PM's (Private Message) on Facebook/Instagram, which also stores copies of messages sent by the recipient, as well as other information.  Facebook/Instagram users can also post comments on the profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

36.  Some Facebook/Instagram pages are affiliated with groups of users, rather than one individual user. Membership in the group is monitored and regulated by the administrator head of the group, who can invite new members and reject or accept requests by users to enter.  Facebook/Instagram can identify all users who are currently registered to a particular group and may be able to identify the administrator of the group.

37.  Facebook/Instagram uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile: friend lists; groups and networks of which the user is a member; "News Feed" information; "Wall" postings; "Notes;" status updates; links to videos, photographs, articles, and other items; event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook/Instagram applications.

38.  Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs contain information about the actions taken by the user ID or IP address on Facebook/Instagram, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook/Instagram profile, that user's IP log would reflect the

fact that the user viewed the profile and would show when and from what IP address the user did so.

39. Social networking providers like Facebook typically retain additional information about their user's accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook/Instagram users may communicate directly with Facebook about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

40. Therefore, the computers of Facebook are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Facebook or Instagram, such as account access information, transaction information, and account application.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

41. As a federal agent, I am trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Facebook are not. I also know that the manner in which the data is preserved and analyzed may be critical to the successful prosecution of any case based upon this evidence. Computer Forensic Examiners are trained to handle digital evidence. Facebook employees are not. It would be inappropriate and impractical, however, for federal agents to search the vast computer network of Facebook for the relevant accounts and then to analyze the contents of those accounts on the premises of Facebook. The impact on Facebook's business would be severe.

42. Therefore, I request authority to seize all images, messages, and other content from the Facebook/Instagram accounts described in Attachment B. In order to accomplish

*Affidavit in Support Search Warrant*  11

the objective of the search warrant with minimum interference to the business activities of Facebook, to protect the rights of the subject of the investigation, and to effectively pursue this investigation, authority is sought to allow Facebook to make a digital copy of the entire contents of the accounts subject to seizure.  That copy will be provided to me or to any authorized federal agent.  The contents will then be analyzed to identify communications and other data subject to seizure pursuant to Attachment B.  Relevant data will be copied to separate media.  The original will be sealed and maintained to establish authenticity, if necessary.

43. Analyzing the data to be provided by Facebook requires special technical skills, equipment, and software.  Searching by keywords for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant.  Merely finding a relevant "hit" does not end the review process.  Certain file formats do not lend themselves to key searches. Keywords search text. Many common electronic mail, database, and spreadsheet applications do not store data as searchable text.  The data is saved in a proprietary non-text format.  And, as the volume of the storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

44. Based on the forgoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months.  Keywords need to be modified continuously based on the results obtained; criminals can use code to avoid keyword searches and mislabel files, encrypt files, deliberately misspell certain words, and take other steps to defeat law enforcement.

45. All forensic analysis of the recovered data will be directed exclusively to the identification and seizure of information within the scope of this warrant.  I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), and 2703(d), by using the warrant to require Facebook to disclose to the government copies of the records and other

*Affidavit in Support Search Warrant*  12

information (including the content of communications) particularly described in Attachment B. Upon receipt of the information described in Attachment B, government-authorized persons will review that information to locate the items in Attachment B.

46. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

47. I, or any other duly authorized federal agent, will personally serve the warrant requested above, and will be assisted by other duly authorized federal investigators.

48. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## SEALING REQUEST

49. This is an ongoing investigation and premature disclosure of the investigation could endanger agents and officers, cause some or all of the targets of the investigation and others to flee, cause destruction or tampering of evidence, and consequently, seriously jeopardize the success of this investigation. Therefore, I request that this Affidavit, the application for the search warrant, the search warrant, Attachments A and B, and all other associated court records be sealed until further order of the Court. In addition, pursuant to Title 18, United States Code, Section 2705(b), I request that this Court order Facebook not to notify anyone of the existence of this warrant, other than its personnel essential to compliance with the execution of this warrant until further order of the Court.

## CONCLUSION

50. Based on the foregoing, I submit that there is probable cause to believe that the items identified in Attachment B have been used in the commission of a crime and constitute evidence, fruits, and instrumentalities of violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (v)(I), Alien Smuggling, and that the foregoing will

*Affidavit in Support Search Warrant*      13

be found on the **Target Account** to be searched, as identified in Attachment A. I declare under penalty of perjury that the foregoing is true and correct.

*John E. Costello*
John E. Costello
Border Patrol Agent-Intelligence, USBP

Sworn to and subscribed before me this <u>25th</u> day of April, 2024.

*Allison H. Goddard*
HONORABLE ALLISON H. GODDARD
United States Magistrate Judge